Joseph J. TRACEY, Petitioner–
Appellant,

v.

Joan PALMATEER, Respondent–
Appellee.

No. 01–35940.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 2003.

Filed Aug. 29, 2003.

Anthony D. Bornstein, Assistant Federal Public Defender, Portland, OR, for petitioner-appellant Joseph Tracey.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Kathleen Cegla, Assistant Attorney General, Salem, OR, for respondent-appellee Joan Palmateer.

Before: LAY,* WALLACE, and TALLMAN, Circuit Judges.

Opinion by Judge TALLMAN; Dissent by Judge LAY.

TALLMAN, Circuit Judge:

Joseph Tracey appeals the district court's denial of his petition for habeas corpus pursuant to 28 U.S.C. § 2254. Tracey's petition challenges the legality of his 1994 Oregon conviction for the first-degree murder of Scott Werner and unlawful use of a weapon. Tracey raises two issues on appeal. First, he says he was denied due process and his right to an impartial jury because the state trial court did not adequately investigate possible juror bias. Second, he claims his state court appellate counsel on his direct appeal was ineffective in violation of the Sixth Amendment.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Victim Werner was the fiancée of Suzanne Winder. Winder owned property—where Winder and Werner lived—next to Tracey's property, but Winder refused to grant Tracey an easement so logging trucks could access Tracey's timber. Relations between Tracey and Winder became strained.

On August 9, 1993, Tracey invited Werner to Tracey's home to discuss the issue. Werner walked to Tracey's residence carrying a walking stick. As Werner approached, Tracey confronted Werner with a sawed-off shotgun. An argument ensued, and Tracey shot Werner in the stomach. Tracey later alleged self-defense by claiming Werner was about to strike Tracey with the stick. As Werner was lying on the ground, Tracey yelled, "Teach you never to come up here again, huh, motherfucker." Werner died from the wound.

Upon hearing the shot, Winder, Lee Bankston (a friend of Werner's), and Gerry Ullman (a neighbor), all ran to the scene. Tracey threatened these witnesses with the gun but did not shoot.

On August 25, 1993, a grand jury in Josephine County, Oregon, indicted Tracey for first-degree murder and gun charges. On the first day of trial, the jury was selected. Once selected, the jurors were excused from the courtroom so the trial

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. We hold Tracey's ineffective-assistance claim to be without merit and thus summarily affirm the district court on that issue.

court could hear a pretrial matter. The jurors were then brought back into the courtroom, and the trial court provided the jury with preliminary instructions. The parties then gave their opening statements. At that point, the trial court excused the jurors for the day and instructed them not to discuss the case with the other jurors.

The next day, the state called its first witness, Tracey's wife. Her testimony until the first morning break only described the conflict over the easement, and did not touch upon the facts of the murder. During the break, the trial court informed the parties that the court had received a note from Juror Arganbright. Juror Arganbright had told the bailiff that she could not continue with the trial. The bailiff instructed her to put the reason in writing. The trial court read the note to the parties. The note stated:

> I'm very sorry but can't continue as a juror on this case. My heart aches for these people and I can't find them guilty of murder. I almost started crying. That is tears came to my eyes hearing their situation and hardship. *Before the jury was selected in talking to two women in line to use the restroom both expressed they felt he was guilty and had bad opinions of him. I expressed she had bad feelings about him—one expressed she had bad feelings about him and the other said, is there any question in reference to the verdict.*

(Errors in original and emphasis added).

The trial court then questioned the defense counsel as to what action he believed the court should take in response to the note. Tracey's counsel, noting that the trial had just begun and none of the testimony introduced so far had discussed the shooting, argued that it would be premature to release Juror Arganbright based solely on the note. The prosecution maintained that, at a minimum, Juror Argan-

bright should be questioned by the trial court.

The court decided to question Juror Arganbright on the record. The court asked Juror Arganbright about her ability to serve as a juror. Juror Arganbright steadfastly maintained that she could not follow the law or be objective. The court then indicated its decision to excuse Juror Arganbright. But before actually excusing her, the trial court questioned Juror Arganbright about the conversations she claimed to have heard in the line to the restroom:

Q  Ma'am, in your note you indicate that you had a conversation prior to jury selection with a couple of other ladies in the jury pool. Do you know if either of those ladies are currently on the jury?

A  They both are.

Q  They both are.

A  They just were talking, you know. We were standing in line in the bathroom. There was two separate times. One—

Q  That was before the jury selection?

A  One was before and one was after.

Q  After what portion of the jury selection?

A  Yesterday.

Q  After all of yesterday? Or?

A  Let's see. The one conversation was in the bathroom before jury selection when you gave us all a break and we got to go back to the bathroom to the jury room.

Q  A whole pile of folks or whatever?

A  Right. That was one conversation. And she was just talking, and I was standing behind her and she was talking with another lady in front, that was in front of her and she just was expressing what I said in that note. And the second time was yes-

terday after you dismissed everyone, before the jury was selected. No. The second one was after the jury was selected and it was yesterday, after, after,—let's see. They both happened yesterday, I guess. That's right. We've only been here one day. One was before jury selection and one was after.

Q  After jury selection we had opening statements and then the jury was excused. Did it occur before or after the opening statements?

A  After. The second one.

Q  Wasn't the jury just excused after that and sent home?

A  I don't know. It was the time we were excused and we had—or maybe we were just sitting in the room until she said we could go home. I know we were sitting in that room and I don't really know if it was, if we came back into here, or if we—we had to sit in that room for a little while until she checked our names off, then we got to go home. I just know we were sitting in that room.[2]

Based on Juror Arganbright's testimony, the defense moved for a mistrial. The trial court, recognizing the lack of specificity in Juror Arganbright's testimony, denied the motion:

As to the other two, I think we have separate issues. As [Juror Arganbright] indicated during questioning a few moments ago, one of these conversations with one of the two women occurred before the jury was ever selected. So we have jurors that say all kinds of things about criminal defendants, about jury service, about this, that, and then we put them through the process and we tell them that they have to follow the rules and the presumptions of innocence and that sort of thing. There's nothing for this Court to feel that general comments such as that during jury pool is sufficient to cause a mistrial.

The other juror gives me a little more concern because the statement suggests that she has some bad opinions about the Defendant, or bad feelings, and that statement may have been made after jury selection and after they were sworn in. Frankly, I'm not sure from Mrs. Arganbright's comments whether that was before they took their second oath or sometime after the initial jury was selected and they were sitting in the jury room.

There's nothing in those comments that suggests to this Court sufficient to cause a mistrial, that that juror, even though she expressed having bad feelings, could not set those feelings aside as we ask them to do and could not

---

**2.** In light of this testimony regarding the other two jurors and the contents of the note, both of which we have quoted in their entirety, we do not agree with the dissent's major premise that two jurors on the jury panel thought Tracey was guilty. Dissent at 1045–46, 1050. The record read as a whole simply does not support this broad conclusion. While Arganbright begins her note explaining that two jurors prejudged the case, Arganbright's note continues on to explain and specify that one juror had bad feelings and one made an off-hand remark about the out-

come of the case. Then, when pressed to explain what she meant when she appeared before counsel and the court, Ms. Arganbright's testimony was far from clear. It is unclear whether the "bad feelings" comment was made after jury selection or before. Similarly vague is the timing of the "is there any question" comment. The record also shows that Arganbright's memory on the timing of these events was hazy and her answers changed during questioning. Thus, we cannot agree with our colleague in dissent that from this record the only reasonable conclusion is that two jurors thought Tracey was

comply with the law, require the State to prove beyond any reasonable doubt before a verdict of guilty would be rendered and at this point the Court is not prepared to declare any mistrial based on this one juror's notes.

Tracey's counsel objected to the trial court's ruling, asserting, "we have another lady who's starting out this trial saying the guy's guilty and we've got her and I don't think that's right. We're objecting to your ruling based on that." The trial court responded:

THE COURT: I understand the objection. However, I don't think that's what the record and the facts actually show. The first juror, Mrs. Arganbright, has discussed, said that her emotional state now and in the future times during the trial might be such that she could not be fair and impartial. Period. This lady says, I have bad feelings about him. To me that's significantly different than saying I find him guilty at this point and I refuse to follow the instructions of the Court. One is an emotional state that has overcome her quite like in someone that falls ill during the middle of the trial and has to be excused. And the other one is a far cry from saying I'm not going to follow the law, I'm not going to presume innocence and I'm going to find him guilty, period. All it says is I have bad feelings about him.

The Court also, and I'm going to state this so the parties can put any objection on the record that they choose. It has been suggested to the Court on and off the record that we at least inquire from Mrs. Arganbright as to the jurors names that made these general comments. The Court does not intend to inquire about these two jurors whatsoever. So

the parties have an objection to that to put on the record, they may.

(Errors in original).

Tracey's counsel did object,[3] but the court refused to ask Juror Arganbright the names of the offending jurors. When the jurors were brought back in, the trial court re-instructed the jurors that they should not be discussing the case during breaks:

Also there's something else I wanted to explain so you don't get the wrong impression or feel the Court was being harsh with you or something. As we sent you out for recess a couple of the jurors had exhibits that had already been offered and received and they were thinking of taking them into the jury room with them. You're to weigh the evidence, you're to view the exhibits, you're to critically analyze all things during the trial on the stand and during deliberations. But when you're in the jury room that's just for a break. It's just for a rest. It's not to be reviewing evidence. It's not to be discussing exhibits or talking with each other about witness testimony. That's why the Court did not want you to take those exhibits into the jury room, because those breaks are just for that purpose. Just for a break. Just to relax.

At the beginning of the trial the Court instructed you you are not to begin deliberation until the end of the trial. And I want to reemphasize that to you. That would include also the instruction that you're not to speak to each other about the trial until the end of the trial when you begin your deliberations. So that's the whole idea of not taking the exhibits in the jury room during breaks. We'd rather you simply go in there and relax

---

guilty before the introduction of the majority of the evidence.

**3.** Respondent contends that Tracey's counsel waived his objection. We disagree. While the record demonstrates that Tracey's counsel

articulated some reluctance to proceed with questioning of the other jurors because it may have prejudiced the defense, we think the record shows that Tracey's counsel adequately preserved the issue.

and have a coffee or a water or juice or whatever and simply give your mind and body a chance to relax a little bit before coming back out and taking more evidence.

. . . .

I want to remind you again that you are not to discuss the case with anyone.

Tracey was convicted, and he appealed his conviction and 35–year sentence. The Oregon Court of Appeals affirmed without opinion. *State v. Tracey,* 134 Or.App. 218, 893 P.2d 580 (1995). The Oregon Supreme Court denied review. *State v. Tracey,* 322 Or. 361, 907 P.2d 248 (1995). Tracey then sought post-conviction collateral relief, which was denied by the Oregon state trial court. This decision was affirmed by the Oregon Court of Appeals without opinion, *Tracey v. Thompson,* 158 Or.App. 566, 978 P.2d 456 (1999), and the Oregon Supreme Court again denied review, *Tracey v. Thompson,* 325 Or. 465, 987 P.2d 514 (1999).

Tracey then filed a pro se petition for a writ of habeas corpus in the United States District Court for the District of Oregon. The petition raised numerous claims, all of which were rejected in the Magistrate Judge's Findings and Recommendation. With one minor factual correction, the district court adopted the Findings and Recommendation and denied Tracey's petition.

## II

■ We review a district court's denial of a petition for habeas corpus de novo. *Dictado v. Ducharme,* 244 F.3d 724, 726(9th Cir.2001). This case is governed by the provisions of the Anti–Terrorism & Effective Death Penalty Act, Pub.L. No. 104–132 (1996) ("AEDPA").

## A

The standards we employ for granting or denying a petition for habeas corpus under AEDPA are well-established. We

may not grant a petition and issue a writ unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Early v. Packer,* 537 U.S. 3, 7, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). Here, Tracey urges that his Oregon state court conviction violates sub-part (1).

■ A state court determination is "contrary to" clearly established Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth in[Supreme Court] cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of[the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an unreasonable application of Supreme Court precedent if the state court correctly identifies that governing legal principle but applies it unreasonably to the facts of the case. *Id.* at 407–08, 120 S.Ct. 1495.

## B

Tracey argues that the trial court's refusal to question Juror Arganbright about the names of the jurors who spoke negatively about Tracey, as well as the court's consequential refusal to question those jurors, violated Tracey's rights to an impartial jury and due process of law. *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), and *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71

L.Ed.2d 78 (1982), provide the most analogous Supreme Court case law that could support Tracey's position.

In *Remmer*, the defendant was convicted by a jury in federal court for income tax evasion. 347 U.S. at 228, 74 S.Ct. 450. After the verdict, the defendant learned that an unnamed person had told the jury foreman that the foreman could profit by entering a verdict for the defendant. *Id.* The foreman told the district court judge, who, with the knowledge of the prosecution but not the defense, requested an FBI investigation. *Id.* The FBI investigated while the trial was proceeding, and the FBI's report was given to the prosecution and the district court, but again the defense had no knowledge of the report. *Id.* The court and prosecutors reviewed the FBI report and concluded that the statement was made in jest, finding no further action was necessary. *Id.*

The defendant moved for a new trial and requested a hearing to determine the effect the investigation may have had on the jury. *Id.* The district court denied the motion without holding a hearing and we affirmed. *Id.* at 229, 74 S.Ct. 450. The Supreme Court vacated and remanded. *Id.* at 230, 74 S.Ct. 450. The Court reasoned that the district court should "not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 229–230, 74 S.Ct. 450.

In *Smith*, the defendant was tried and convicted in New York state court for two counts of murder and one count of attempted murder. 455 U.S. at 210, 102 S.Ct. 940. After the verdict, the defendant learned that during the trial one of the jurors had applied to the district attorney's office for employment as a felony investigator. *Id.* at 212, 102 S.Ct. 940. The two prosecuting attorneys became aware of the juror's application during the trial, but failed to notify the court or the defendant's counsel. *Id.* at 212–13, 102 S.Ct. 940. The defendant moved to set aside the verdict. *Id.* at 213, 102 S.Ct. 940. The trial court held a hearing at which the prosecutors and the juror testified. *Id.* After the hearing, the trial court denied the motion, noting that while the application was an indiscretion, it did not evince a premature determination of guilt or an inability to be impartial. *Id.*

In his petition for federal habeas relief, the defendant asserted that he had been denied due process under the Fourteenth Amendment. *Id.* at 214, 102 S.Ct. 940. The Supreme Court disagreed, noting that the hearing held by the trial court properly investigated the allegation of bias. It explained:

> Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences *and to determine the effect of such occurrence*s when they happen. Such determinations *may* properly be made at a hearing like that ordered in *Remmer* and held in this case.

*Id.* at 217, 102 S.Ct. 940 (emphasis added).[4]

---

4. The dissent takes us to task for relying too heavily on the word "may" in *Smith* to support our conclusion that habeas relief is not warranted. But our reading of *Smith* is consistent with our case law allowing for a flexible approach when determining what steps to take in response to alleged juror bias. *See,* *e.g., United States v. Angulo,* 4 F.3d 843, 847 (9th Cir.1993).

Nor does *Dyer v. Calderon,* 151 F.3d 970 (9th Cir.1998), mandate a contrary result. First, to the extent that *Dyer* can be read to overrule prior Ninth Circuit authority approving a flexible approach, as the dissent seems to urge, *Dyer* is still only Ninth Circuit prece-

Applying this principle to the defendant's case, the Court concluded that "if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system." *Id.* at 218, 102 S.Ct. 940.

The issue we must decide, then, is whether the trial court's decision not to question Juror Arganbright further to obtain the names of the two jurors and to take additional testimony from them was contrary to or an unreasonable application of the Supreme Court's decisions in *Remmer* and *Smith*. We hold it was neither.

*Remmer* and *Smith* do not stand for the proposition that *any time* evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias. *Smith* states that this "may" be the proper course, and that a hearing "is sufficient" to satisfy due process. 455 U.S. at 217, 218, 102 S.Ct. 940. *Smith* leaves open the door as to whether a hearing is always required and what else may be "sufficient" to alleviate any due process concerns.

■ Indeed, our own cases have interpreted *Smith* and *Remmer* as providing a flexible rule. As our colleague in dissent has acknowledged, "[a]n evidentiary hearing is not mandated *every* time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness

of the alleged misconduct or bias, and the credibility of the source." *Angulo,* 4 F.3d at 847 (Lay, J.) (emphasis in original and citation omitted); *see also United States v. Hanley,* 190 F.3d 1017, 1031 (9th Cir.1999) (citing *Angulo* and holding that "[h]ere, the district court did what it was required to do. It considered the content and the seriousness of the alleged statements [made by one juror during the trial that allegedly showed bias] and properly determined that such vague statements did not expose Defendants to unfair prejudice. In the circumstances, the district court's refusal to hold an evidentiary hearing was not an abuse of discretion"); *United States v. Langford,* 802 F.2d 1176, 1180(9th Cir. 1986) ("While we recognize that where a trial court learns of a possible incident of jury misconduct, it is preferable to hold an evidentiary hearing ... not every allegation [of misconduct] requires a full-dress hearing"); *United States v. Halbert,* 712 F.2d 388, 389 (9th Cir.1983) (affirming the district court's refusal to hold a hearing regarding extraneous information considered by a juror when the district court knew the exact scope and nature of the information). We have also held that *Remmer's* command that hearings are warranted in *every* case is unique to the tampering context, where the potential effect on the jury is severe. *See United States v. Dutkel,* 192 F.3d 893, 894–95 (9th Cir.1999). Tampering was not at issue in Tracey's case.

---

dent. It is not Supreme Court precedent, and thus only instructive for AEDPA purposes, not controlling under 28 U.S.C. § 2254(d)(1). Second, we do not think *Dyer* stands for the hard-and-fast rule requiring the automatic, full-fledged hearing that the dissent proposes. *Dyer* does state that a court "must undertake an investigation," but explains that an "informal ... hearing may be adequate," and that due process only requires representation of all parties and an "investigation ... reason-

ably calculated to resolve the doubts raised about the juror's impartiality." *Id.* at 974–75. Here, even if we assumed *Dyer* is controlling under AEDPA, the trial court's hearing questioning Juror Arganbright satisfied the *Dyer* standard when one considers the timing of the allegation, the source of the allegation, the scant evidence which had then been introduced at trial, and the ambiguity and confusion evident in Juror Arganbright's testimony.

If this court has found that the Fifth and Sixth Amendments do not always mandate a hearing regarding allegations of juror bias in federal cases, it follows "as the night the day" that due process under the Fourteenth Amendment is similarly dexterous. *Smith,* 455 U.S. at 218, 102 S.Ct. 940. Thus, we do not think the Oregon state court's determination is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

Furthermore, even if we were to assume that our own Ninth Circuit guidelines regarding when a hearing is warranted were a binding interpretation on Oregon state courts—which of course they are not under AEDPA—we would still find no AEDPA error in the state court rulings approving the conviction. The trial court was confronted with an emotional juror who provided ambiguous and confusing testimony about who said what, where they said it, and when they said it. The allegations lacked specificity and noted a bias that, even if true, was not caused by outside influences and occurred before the presentation of evidence of the murder.

■ The Oregon courts correctly approved the trial court's proper consideration of the nature and timing of the bias in judging its relative malignancy. The trial court, after dismissing Juror Arganbright, immediately issued a curative instruction reminding the jurors that they were not to discuss the case until the close of evidence. Thus, even if we subjected Tracey's conviction to the more clearly defined contours of Ninth Circuit standards, we think the state court's decision not to hold a more elaborate hearing under these facts was still well within the trial court's discretion.

We also note that, even if we were to conclude that the Oregon courts were bound to hold a hearing under *Remmer*

and *Smith,* which they were not, a hearing was in fact held. With the parties present and on the record, the trial court questioned Juror Arganbright regarding what she had heard. This may not be as in-depth a hearing as contemplated by *Remmer* and *Smith.* But it was the kind of discretionary inquiry best left to the sound judgment of the trial judge who observed voir dire and empaneled the jury.

### III

■ Clearly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time a claim of juror bias is raised. Our own cases show as much. Tracey is not entitled to habeas relief.

AFFIRMED.

LAY, Circuit Judge, dissenting:

Justice Black observed in *In re Michael,* 326 U.S. 224, 228, 66 S.Ct. 78, 90 L.Ed. 30 (1945): "[I]t is difficult to conceive of a more effective obstruction to the judicial process than a juror who has prejudged the case." In all due respect, the majority's refusal to require the trial judge to hold a hearing as to the expressed colorable bias of two jurors before hearing any evidence in the case is a clear travesty of justice. Such a holding is directly contrary to United States Supreme Court precedent.

In this first degree murder trial, before evidence was presented and after the jury was sworn, Mrs. Arganbright, one of the jurors, informed the state trial judge that she heard two other jurors express an opinion in the jury room that they felt Tracey was guilty. Juror Arganbright's note stated:

> I'm very sorry but can't continue as a juror on this case. My heart aches for these people and I can't find them guilty of murder. I almost started crying.

That is tears came to my eyes hearing their situation and hardship. Before the jury was selected in talking to two women in line to use the restroom *both expressed they felt he was guilty* and had bad opinions of him. I expressed she had bad feelings about him—one expressed she had bad feelings about him and the other said, is there any question in reference to [the] verdict.

(Emphasis added).

After extensive questioning concerning Arganbright's own bias, the trial judge dismissed her because he found she was emotionally unfit to sit as a juror. The trial judge, thereafter, briefly questioned Arganbright out of the presence of the other jurors about the alleged bias of the other two women. Arganbright said she overheard two women express an opinion that they felt Tracey was guilty.[1] She also stated that one juror expressed she had "bad feelings" about Tracey before the jury was selected, and the second juror made her statement after the jury was selected.[2] The trial judge then refused to further investigate the statements of the two jurors and entertained an objection from counsel.[3]

1. In footnote 2, the majority opinion recites: In light of this testimony regarding the other two jurors and the contents of the note, both of which we have quoted in their entirety, we do not agree with the dissent's major premise that two jurors on the jury panel thought Tracey was guilty. Dissent at 1045–46, 1050. The record read as a whole simply does not support this broad conclusion. While Arganbright begins her note explaining that two jurors prejudged the case, Arganbright's note continues on to explain and specify that one juror had bad feelings and one made an off-hand remark about the outcome of the case. Then, when pressed when she appeared before counsel and the court, Ms. Arganbright's testimony was far from clear. It is unclear whether the "bad feelings" comment was made after jury selection or before. Similarly vague is the timing of the "is there any question" comment. The record also shows that Arganbright's memory on the timing of these events was hazy and her answers changed during questioning. Thus, we cannot agree with our colleague in dissent that from this record that the only reasonable conclusion is that two jurors thought that Tracey was guilty before the introduction of the majority of the evidence.

   I do not want to appear overly argumentative, but Arganbright's note to the trial judge stated: "Before the jury was selected in talking to two women in line to use the restroom *both expressed they felt he was guilty ....*" In all due respect, the majority justifies its opinion by completely ignoring the record that Arganbright stated that "both [jurors] expressed they felt he was guilty." I cannot imagine a more colorable showing of bias when Arganbright reported that both jurors, before trial, expressed an opinion that they felt the defendant was guilty. The jurors also said, in the same context, that they had "bad feelings about him" and that there was no question as to the verdict.

2. The majority asserts that although the state trial judge was not required to hold a hearing, a "hearing was in fact held." Maj. Op. at 1045. In all due respect, this is a misreading of the record. The trial judge held an *in camera* hearing with Arganbright because she initially stated in her note that *she* could not be impartial because she felt sorry for Tracey. The questioning of Arganbright did not investigate the colorable bias of the other two jurors who stated that they felt Tracey was guilty. After extensive investigation, the trial judge excused her because he found she was emotionally unfit to serve as a juror. The hearing had absolutely nothing to do with investigating the state of mind of the other two jurors.

3. Counsel's objection was as follows:
   Looking at what we were told about this second juror, which is kind of sketchy, but I got the impression that after all of the beginning process was completed that she was still saying oh, the guy's guilty, which means to me as she starts in sitting right there and listening to opening statements she's not giving the Defendant his right to the presumption of innocence as set forth by the Constitution of the United States, state of Oregon, as set forth by the statutes and laws provided in the state of Oregon as

After the objection, the trial judge refused to carry on any further investigation. He justified his ruling as follows:

THE COURT: I understand the objection. However, I don't think that's what the record and the facts actually show.... This lady [one of the jurors whom Arganbright overheard] says, *I have bad feelings about him.* To me that's significantly different than saying I find him guilty at this point and I refuse to follow the instructions of the Court.... [This] is a far cry from saying I'm not going to follow the law, I'm not going to presume innocence and I'm going to find him guilty, period. All it says is I have bad feelings about him.

The Court also, and I'm going to state this so the parties can put any objection on the record that they choose. It has been suggested to the Court on and off the record that we at least inquire from Mrs. Arganbright as to the jurors names that made these general comments. *The Court does not intend to inquire about these two jurors whatsoever.* So the parties have an objection to that to put on the record, they may.

(Emphasis added).

The trial judge observed that the two jurors simply had *bad feelings* about Tracey. The trial judge misinterpreted Arganbright's unambiguous note and failed to recognize that the two jurors had expressed an opinion, before evidence was received, that they both believed Tracey was guilty. Similarly, the State of Oregon in its brief before this court, as well as the

federal magistrate judge, never once acknowledged the jurors' statements that they believed Tracey was guilty. Now, the majority opinion compounds that error by holding the record does not support such a broad conclusion.

The majority justifies its holding by saying that Mrs. Arganbright's note and testimony reflecting the colorable bias of the two jurors was ambiguous. The majority argues that the record must show conclusively that the jurors thought Tracey was guilty. It argues that Mrs. Arganbright's note and testimony shows that it was unclear in that she was ambiguous as to whether the bad feelings comment was made before or after the jury selection. I fail to understand what difference this might make. The state trial judge was notified of these statements by the two jurors that they felt Tracey was guilty before any evidence was received. It is clear the "bad feeling" comment cannot be read out of context. It was conjoined with the jurors' statements that they felt Tracey was guilty before any evidence was received. Finally, I must disagree with the majority that Mrs. Arganbright's testimony was ambiguous in that it specifically recalled the timing of the two jurors' comments.

It is not necessary in determining whether a juror is impartial to hold that their feelings were conclusively shown. There is no question that the statements of Mrs. Arganbright show that they possessed a colorable bias before the trial

---

when we have one of 12 jurors that starts this proceeding totally disregarding a man's constitutional rights. *I think it is error to continue.* And as the Court has already pointed out, we don't know the exact details and what this lady actually thinks. But we do have a good indication that she is not giving the Defendant the benefit of the presumption of innocence. *And that's the basis for my objection to not inquiring of this*

*particular juror at this time,* whether or not she is willing and prepared to say I will give him the benefit of the law that says he's presumed innocent and I will carry that through until this trial is completed. Again, as I said earlier, she just apparently totally disregarded everything that happened here yesterday. So that's the basis of our objection.

(Emphasis added).

commenced. The United States Supreme Court noted in *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931): " 'As the juror best knows the condition of his own mind, no satisfactory conclusion can be arrived at, without resort to himself. Applying this test then, how is it possible to ascertain whether he is prejudiced or not, unless questions similar to the foregoing are propounded to him?' " *Id.* at 313 n. 3, 51 S.Ct. 470 (quoting *People v. Reyes,* 5 Cal. 347, 349, 1855 WL 769 (1855)).

Thus, there should be little question that the state trial judge under the actual circumstances shown by Mrs. Arganbright's note that the Constitution mandated a further hearing to explore the alleged colorable bias of the two jurors. In all due respect, it is unfathomable to hold otherwise.

The state trial judge stated: "This lady says I have bad feelings about him. To me that is significantly different than saying I find him guilty at this point. . . ." Of course, this ignores the full content of the Arganbright's note, that she had overheard two jurors express that they felt Tracey was guilty before the trial commenced.[4] The trial judge then called the entire jury into the courtroom and instructed them not to talk about the case with one another. Such an instruction did little to investigate the obvious bias which two of the sitting jurors possessed.

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), interpreting the Anti–Terrorism & Effective Death Penalty Act, Pub.L. No. 104–132 (1996) ("AEDPA"), the Court observed that a state court ruling is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in

[Supreme Court] cases." *Id.* at 405–06, 120 S.Ct. 1495.

There is no more settled rule under our Constitution than the principle that due process requires that every defendant be given a fair trial. This principle is further embodied in the Constitution's requirement that every juror must be impartial. It is a violation of the Due Process Clause made applicable to the states through the Fourteenth Amendment that a biased juror should not and cannot serve on a jury in a civil or criminal case. In *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the Supreme Court observed:

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 [ (1948) ]; *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 [ (1927) ]. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 [ (1955) ]. In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as "indifferent as he stands unsworn." Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. *Cf. Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 [(1960) ]. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Mar-

---

4. The trial judge may have overlooked the full context of Arganbright's note, since its author was primarily requesting that she be excused from jury duty due to her own emotional state.

shall in 1 Burr's Trial 416 (1807). "The theory of the law is that a juror who has formed an opinion cannot be impartial." *Reynolds v. United States,* 98 U.S. 145, 155, 25 L.Ed. 244 [ (1878) ].

*Id.* at 722, 81 S.Ct. 1639 (footnote omitted).

In *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), the Court observed: "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Id.* at 727, 112 S.Ct. 2222 (citing *Turner v. Louisiana,* 379 U.S. 466, 471, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)).

A legion of lower court opinions, including cases from the Ninth Circuit, acknowledge long-standing Supreme Court precedent holding that due process requires an impartial jury.[5]

I have great difficulty understanding the majority's affirmance of the trial court's action. The majority opinion argues at length that a trial judge need not hold an investigation or hearing every time a party alleges juror bias. Of course, the need to interrogate the jurors or to declare a mistrial or to allow an *in camera* hearing with counsel, depends upon the factual circumstances of each case. As Tracey's trial counsel urged, jurors who expressed an opinion that a defendant was guilty before hearing evidence clearly presented a colorable claim of bias. There is no question that when the trial judge was notified as to the beliefs of these two jurors, further investigation was necessary.[6] As the Supreme Court stated in *Smith v. Phillips:* "Due process means a jury capable and willing to decide the case solely on the

---

**5.** *See, e.g., Mason v. Mitchell,* 320 F.3d 604, 636 (6th Cir.2003) (noting defendant must be guaranteed an impartial and fair jury); *Jones v. Cooper,* 311 F.3d 306, 310 (4th Cir.2002) (holding state must provide impartial juries); *Williams v. Woodford,* 306 F.3d 665, 723 (9th Cir.2002) (noting Sixth Amendment guarantees the right to impartial jurors); *Green v. White,* 232 F.3d 671, 676 (9th Cir.2000) (holding a juror's bias against a defendant taints the entire trial); *United States v. McClinton,* 135 F.3d 1178, 1188 (7th Cir.1998) (noting the trial judge correctly safeguarded the defendant's Sixth Amendment right by questioning potentially biased jurors in detail and in a manner that allowed counsel to participate); *Barry v. Bergen County Prob. Dep't,* 128 F.3d 152, 163 (3d. Cir.1997) (stating due process requires a trial by an impartial jury); *United States v. Lacey,* 86 F.3d 956, 969 (10th Cir. 1996) (emphasizing the importance of questioning potentially biased jurors in a hearing); *Jordan v. Lippman,* 763 F.2d 1265, 1267 (11th Cir.1985) (holding a defendant's constitutional rights are violated when the jury is not impartial); *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.1977) (holding defendant is denied his Sixth Amendment right when one juror is biased); *Oswald v. Bertrand,* 249 F.Supp.2d 1078 (E.D.Wisc.2003) (granting petitioner's writ of habeas corpus because the state trial judge failed to inquire of a potential juror who indicated that he would vote either way to end the trial); *United States ex rel. Hawthorne v. Cowan,* 224 F.Supp.2d 1178, 1188 (N.D.Ill.2002) (stating due process requires a jury willing to decide a case on the evidence before it); *Swindler v. State,* 267 Ark. 418, 592 S.W.2d 91, 94 (1979) (stating defendants must be afforded an impartial jury during trial); *In re Hitchings,* 6 Cal.4th 97, 24 Cal.Rptr.2d 74, 860 P.2d 466, 472 (1993) (noting the right to an impartial jury is embedded in the Constitution and in case law); *People v. Cole,* 54 Ill.2d 401, 298 N.E.2d 705, 711 (1973) (stating fairness requires the accused receive a trial before an impartial jury); *People v. Daoust,* 228 Mich.App. 1, 577 N.W.2d 179, 183 (1998) (emphasizing that defendants are constitutionally entitled to be tried before an impartial jury); *State v. Greer,* 635 N.W.2d 82, 87 (Minn.2001) (noting both the United States and Minnesota Constitutions guarantee the right of an accused to be tried by an impartial jury); *Mhoon v. State,* 464 So.2d 77, 80 (Miss.1985) (noting the fundamental requirement of a fair trial is an impartial jury); *Collins v. State,* 589 P.2d 1283, 1289 (Wyo. 1979) (stating the Constitution requires a panel of indifferent, impartial jurors).

**6.** In *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), a case dealing with racial prejudice, the Supreme Court observed:

evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences *and to determine the effect of such occurrences when they happen.*" 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (emphasis added). The majority relies upon the next sentence in *Smith* which reads: "Such determinations *may* properly be made at a hearing like that ordered in *Remmer* and held in this case." *Id.* (their emphasis). The Court in *Remmer* actually supports the need for further investigation when one party raises a colorable claim of jury bias. *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

Nevertheless, *Remmer* is not applicable in the present case because the Supreme Court based its decision on the supervisory power of the Supreme Court over lower federal courts rather than on the commands of the Sixth Amendment. *See Mu'Min v. Virginia,* 500 U.S. 415, 430–31, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).

In the present case, there was no hearing held to explore the colorable bias of the two women jurors. The trial judge refused to make any investigation whatsoever. The majority puts great emphasis upon the word "may" in the *Smith* case, but the full context of that sentence is simply a deferential recognition by the Supreme Court that trial judges may use different procedures to ferret out the bias.

Some hearings may be held at the time of the occurrence, while others may be held at the close of the evidence. The trial court, rather than conduct an interrogation or further investigation, may declare a mistrial, or the trial judge may believe there is no proof of a colorable basis of bias. It would be a mockery of justice to say that the sentence relied upon by the majority reduces the application of the constitutional mandate required of state courts to a matter of discretion when there exists a clear, colorable claim of bias. In this case, as in many other state habeas cases, the trial court owed a duty to "determine the effect of such occurrences when they happened." *Smith,* 455 U.S. at 217, 102 S.Ct. 940.

The majority now emphasizes that in a number of cases, such as *Remmer,* the duty to investigate juror bias is only necessary where an outside source wrongfully tampers with jurors. I respectfully submit this is a total non-sequitur. The question of impartiality is determined by the juror's state of mind and does not turn upon how or why the juror came to possess a bias or prejudge the case before it is tried. In the present case, we will never know the source of the two jurors' bias due to the trial court's failure to make any inquiry of the two jurors whatsoever.[7]

A number of other Supreme Court cases further emphasize the trial court's duty to

---

But the question is not as to the civil privileges of the negro, or as to the dominant sentiment of the community and the general absence of any disqualifying prejudice, but as to the bias of the particular jurors who are to try the accused. If in fact, sharing the general sentiment, they were found to be impartial, no harm would be done in permitting the question; but if any one of them was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit.
*Id.* at 314, 51 S.Ct. 470.

7. Page 1044 of the majority opinion recites:

The issue we must decide, then, is whether the trial court's decision not to question Juror Arganbright further to obtain the names of the two jurors and to take additional testimony from them was contrary to or an unreasonable application of the Supreme Court's decisions in *Remmer* and *Smith.* We hold it was neither.

I disagree as to the issue we confront. The fundamental issue is whether, as pointed out in the *Aldridge* case, the two jurors who expressed feelings that the defendant was guilty should be questioned as to their colorable bias in prejudging the defendant's guilt before hearing any evidence.

investigate claims of juror bias. In *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (per curiam), the Court granted a petition for a writ of habeas corpus because the bailiff told a juror he felt the petitioner was guilty. The court found the bailiff's comments violated the petitioner's right to a fair trial even though the comments were privately conveyed to only one juror. *Id.* at 365–66, 87 S.Ct. 468.

In *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the Court granted a new trial to the petitioner because jurors had inappropriate contact with key witnesses. The Court noted "[t]he requirement that a jury's verdict must be based upon the evidence developed at the trial goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." (Internal quotations omitted).

*Patterson v. Colorado*, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907), provides strong language to support Tracey's petition. The Court said "[t]he theory of our [jury] system is that conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, *whether of private talk* or public print." *Id.* at 462, 27 S.Ct. 556 (emphasis added).

The Supreme Court has previously held in *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), that where circumstances suggested a need for voir dire to include questioning about racial prejudice, such questions *must be permitted.* *Id.* at 527, 93 S.Ct. 848. *Cf., Groppi v. Wisconsin*, 400 U.S. 505, 508–09, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971); *see also Mu'Min*, 500 U.S. at 430–31, 111 S.Ct. 1899(holding that where jurors have acquired knowledge of a case from an outside source, such jurors must be asked

whether the information caused them to form an opinion about the guilt or innocence of the defendant). The Court in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), came to a similar conclusion, holding that the trial judge's failure to protect jurors from publicity surrounding the case deprived the defendant of a fair trial. The Court criticized the trial judge's failure to ask the jurors "whether they had read or heard specific prejudicial comment[s] about the case . . . ." *Id.* at 357, 86 S.Ct. 1507.

The greatest concern in selecting a jury is to make certain that jurors do not have preconceived opinions or judgments as to the basic issue in the case. In the present case, we will never know why these jurors prejudged the defendant as guilty. The trial judge never inquired further to ascertain the source of their biased opinions. Assume one of these jurors testified that her opinion was formed before trial by reading an excerpt of the case in the newspaper; or that an outside source had approached her before trial; or assume one of these jurors might have said that she felt that anyone charged with a crime was guilty of a crime—reviewing courts will never know the basis of her prejudgment because the trial court failed to investigate the source of the obvious bias.

I am not aware of any case in the United States, particularly those of the Supreme Court of the United States, that condones a state trial judge's failure to investigate the report of jurors expressing an opinion that the defendant is guilty before the trial commenced. Surely, the constitutional mandate as interpreted by the Supreme Court requires more than the expression of indifference that was expressed by the state trial judge in refusing to further investigate the report of juror bias.[8]

---

8. It should also be noted that the majority relies on dictum from other Ninth Circuit cases, but fails to cite or heed the ruling of *Dyer v. Calderon,* 151 F.3d 970 (9th Cir.1998).

It is difficult to understand, particularly in a serious case that involves a charge of first degree murder, that a trial judge would allow two jurors to sit on the jury who have expressed opinions of the defendant's guilt and who have obviously prejudged the case. Juror Arganbright was excused from jury service based on her credible admission that she lacked impartiality. There exists no reason to disbelieve her account that the other two jurors made such statements about Tracey's guilt. It is difficult to believe that any of the trial judge's instructions would purge either juror of their bias. I find nothing in the majority opinion which in any way justifies the state trial judge's failure to make further investigation of the expressions of obvious bias. I submit this was grievous error and constitutes a miscarriage of justice. Tracey's counsel could do nothing more than object to the trial judge's ruling. He is to be commended for that. Yet, his sound and accurate objection fell upon deaf ears in the state court as well as in all proceedings up to now. I would order a conditional grant of the petition for a writ of habeas corpus; unless the State of Oregon grants a new trial within 120 days of our mandate, the writ should be granted unconditionally.

---

In *Dyer*, the petitioner filed a writ of habeas from his state court conviction, claiming his Sixth Amendment rights were violated because the jurors were biased. The court set forth the analysis for evaluating a writ of habeas alleging juror bias:

> A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances. *See . . . Remmer v. United States*, 350 U.S. 377, 379, 76 S.Ct. 425, 100 L.Ed. 435 (1956). An informal in camera hearing may be adequate for this purpose; due process requires only that all parties be represented, and that the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality. *See Smith v.*

*Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir.1990). So long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness. *See Tinsley v. Borg*, 895 F.2d 520, 526 (9th Cir.1990).

*Id.* at 974–75. The majority thus has not followed the Ninth Circuit's interpretation of *Remmer* because Tracey unquestionably presented the state trial judge with a colorable claim of juror bias. Further, the trial judge did not conduct an investigation that was "reasonably calculated to resolve the doubts raised about the juror's impartiality." *Id.*