Gayle BISHOP, Petitioner—Appellant,

v.

The CONTRA COSTA SUPERIOR COURT; Attorney General of the State of California, Respondents—Appellees.

No. 04–17334.

United States Court of Appeals, Ninth Circuit.

Argued Sept. 13, 2006.

Submitted March 1, 2007.

Filed March 1, 2007.

Dennis P. Riordan, Esq., Donald M. Horgan, Esq., Riordan & Horgan, San Francisco, CA, for Petitioner–Appellant.

Dane R. Gillette, Esq., AGCA—Office of the California Attorney General, San Francisco, CA, for Respondents–Appellees.

Before: B. FLETCHER and BERZON, Circuit Judges, and TRAGER *, District Judge.

## MEMORANDUM **

A jury convicted former Contra Costa County Commissioner Gayle Bishop of misusing county-funded office space, office equipment, and employees to aid her re-election efforts and to conduct work related to her personal law practice, and also of committing perjury during her testimony before a grand jury investigating her actions. The California Court of Appeal affirmed Bishop's conviction on five counts of misappropriating public money, CAL. PENAL CODE § 424, and two counts of perjury, id. § 118. Because this case arises in habeas, relief could be granted only if the California courts' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Applying this standard, the federal district court denied habeas relief. We affirm except with respect to one perjury count.

### I.

Bishop alleges that the state trial judge committed constitutional error by failing to

---

* The Honorable David G. Trager, Senior United States District Judge for the Eastern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

instruct the jury, as requested by the defense, that reimbursement is a defense to misappropriation charges. Bishop maintains she was entitled to such an instruction because James Sepulveda, a lawyer from the District Attorney's Office, had informed her during the summer of 1993 that the law allowed personal use of county-funded resources as long as she reimbursed the County. At trial, Sepulveda, who prosecuted Bishop's case, told the jury that reimbursement is not a defense under California's misappropriation statute, and the judge denied Bishop's request to instruct the jury to the contrary. The California Court of Appeal agreed with Sepulveda's interpretation of state law.

"[T]he Due Process Clause of the Constitution ... prohibits convictions based on misleading actions by government officials." *United States v. Batterjee,* 361 F.3d 1210, 1216 (9th Cir.2004); *see also Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). Bishop may therefore have been constitutionally entitled to a reimbursement defense even though California's misappropriation statute does not provide one.

To obtain relief on a claim that a valid defense was not given in jury instructions, "[a] habeas petitioner must show that the alleged instructional error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Clark v. Brown,* 450 F.3d 898, 905 (9th Cir.) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)), *cert denied,* —— U.S. ——, 127 S.Ct. 555, 166 L.Ed.2d 423 (2006). In this context, a "substantial and injurious effect" means a "reasonable probability" that the jury would have arrived at a different verdict had the instruction been given. *Id.* at 916. To decide this prejudice question, the court looks to (1) the weight of evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge. *See Beardslee v. Woodford,* 358 F.3d 560, 578 (9th Cir.2004).

■ After carefully surveying the evidence, we conclude that Bishop does not meet this standard for any of the counts on which she was convicted. Bishop presented evidence that she followed Sepulveda's advice by reimbursing her use of the county's material resources. She offered no evidence, however, that she understood Sepulveda's advice to permit reimbursement for misappropriated staff time. Instead, she claimed that the staff never did her private tasks on county-paid time, but rather performed them on their personal time.

For several of the counts, the state's evidence focused on Bishop's campaign-related misuse of county-paid staff time, not on use of material resources. The factual issue concerning these counts was whether certain employees had kept a database of campaign contributors, designed fundraising invitations, prepared campaign-related press clippings, and wrote fundraising letters while on the clock for the county. In finding Bishop guilty on these counts, the jury must have rejected Bishop's testimony that these chores were done during the employees' personal time. A reimbursement defense therefore would not have absolved the illegal conduct alleged in those counts.

Although the state's case on the count related to Bishop's law practice focused heavily on her use of the county's material resources, a reimbursement instruction could not have completely absolved the conduct alleged in that count for a different reason: Undisputed evidence established that Bishop used county equipment for legal work *before* she received the advice on reimbursement. Due process con-

cerns arise only when "a government official commits an error and the defendant relies on it *and thereby violates the law*"—not, as here, when the violation of the law predates the incorrect advice. *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir.1994) (emphasis added). We therefore affirm the district court's denial of habeas relief on this issue.

## II.

Bishop argues that her trial lawyers labored under a conflict of interest, violating her right to counsel. An unconstitutional conflict arises when a defendant's lawyer previously represented a witness in the case "if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties." *United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir.2002) (quoting *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir.1989)) (internal quotation mark omitted). Bishop alleges that a conflict arose in her case because the trial judge forbid one of her two lawyers from participating in pre-trial discussions about one of the state's witnesses, who had been his client a decade earlier in an unrelated family law matter. The cases were not "substantially related" and the lawyers did not "reveal[ ] privileged communications." *Id.* Bishop argues, however, that the judge's order caused her lawyers to "otherwise divide[ ] [their] loyalties" between her and the former witness. *Id.*

To show a constitutional violation, Bishop must demonstrate both that her lawyer had "an actual conflict" and that this conflict "adversely affected [her] lawyer's performance." *United States v. Wells*, 394 F.3d 725, 733 (9th Cir.2005) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)) (internal quotation mark omitted). "[T]o show adverse

effect, a defendant need not demonstrate prejudice—that the outcome of his trial would have been different but for the conflict—but only that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* (quoting *United States v. Stantini*, 85 F.3d 9, 16 (2d Cir.1996)) (internal quotation marks omitted).

█ The court order did not create an actual conflict as to both of Bishop's attorneys because its explicit terms only applied to one of the attorneys. Although a successive representation conflict that arises as a matter of ethical rules applies to all the members of that lawyer's firm, *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir.2003), the conflict Bishop here complains about arose only because of the order, so its breadth is set by that order.

Moreover, even if the actual conflict applied to both of Bishop's lawyers, there was no adverse effect as a result of the conflict. Bishop does not proffer any foregone defense strategies that were "inherently in conflict with or not undertaken *due to the attorney's other loyalties or interests.*" *Wells*, 394 F.3d at 733 (emphasis added). The failure to use the custody dispute records cannot be attributed to the conflict the order created, because the records were public and the order left one lawyer free to search for them. Bishop also cannot claim an adverse effect based on her lawyers' failure to use knowledge attainable only through their past representation of the witness. *Shwayder*, 312 F.3d at 1120.

Bishop claims that her lawyers' decision not to disqualify the prosecutor was a quid pro quo for his failure to seek the lawyers' own disqualification, and was thus connected to the conflicted loyalty created by the

order. We agree with the California Court of Appeal that Sepulveda's service in the case is quite troubling, given his status as a percipient witness. The record, however, does not explain the failure of Bishop's lawyers to object during trial to Sepulveda's participation. The California Court of Appeal rejected the effort to link this failure and the lawyers' fear about their potentially disqualifying conflict as "overly speculative," and noted that there is a plausible explanation for the failure to disqualify Sepulveda having nothing to do with the conflict—namely, that Bishop and her lawyers did not want him to appear as a witness. Because demonstrating that a conflict produced an actual effect is "a substantial hurdle" even though it does not require a showing of prejudice, *Lockhart v. Terhune,* 250 F.3d 1223, 1231 (9th Cir. 2001) (quoting *Maiden v. Bunnell,* 35 F.3d 477, 481 (9th Cir.1994)), the California Court of Appeal was not unreasonable in rejecting Bishop's claim of an unconstitutional conflict on this ground.

Finally, the trial court's order also did not unconstitutionally restrict Bishop's ability to confer with her lawyers, as it left her free at all times to speak with one of the lawyers about the witness. *See United States v. Miguel,* 111 F.3d 666, 672–73 (9th Cir.1997).

### III.

■ Bishop also argues that the jury considered impermissible extrinsic evidence when one of the jurors discussed his experience as a Contra Costa County employee. A juror's personal experiences can enter jury deliberations to aid the interpretation of record evidence. *See United States v. Navarro–Garcia,* 926 F.2d 818, 821–22 (9th Cir.1991). We doubt the alleged discussions went beyond that scope. In any case, we would have to find "the extrinsic evidence had a 'substantial

and injurious effect or influence in determining the jury's verdict'" to grant relief on this claim. *Sassounian v. Roe,* 230 F.3d 1097, 1108 (9th Cir.2000) (quoting *Brecht,* 507 U.S. at 623, 113 S.Ct. 1710). In the absence of any evidence specifying the precise nature of the statements about the general "practices and mentalities" of county employees, we cannot conclude that those statements were capable of altering the jury's credibility evaluations of individual county employees. Bishop therefore has not established that the alleged extrinsic evidence had any "substantial and injurious effect" on the jury. *Id.*

Because the due process clause allows courts to "consider the content of the allegations [and] the seriousness of the alleged misconduct" in deciding whether to hold an evidentiary hearing when a defendant alleges jury misconduct, *Tracey v. Palmateer,* 341 F.3d 1037, 1044 (9th Cir.2003), the vague allegations in the juror affidavits did not require the state trial court to conduct a further inquiry.

### IV.

We will grant habeas relief on the erroneous admission of evidence when its consideration "rendered the trial so fundamentally unfair as to violate due process." *Windham v. Merkle,* 163 F.3d 1092, 1103 (9th Cir.1998). Although the California Court of Appeal held that the trial court erred in allowing witnesses to testify that Bishop "lied" during her grand jury appearance because the testimony was unnecessary opinion testimony by a lay witness, *see* CAL. EVID. CODE § 800(b), it did not unreasonably hold that the error was harmless. Federal courts "may not grant [a] habeas petition ... if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is only appropriate if the [state court] applied harmless error review in an 'objectively unreasonable' manner." *Mitchell v.*

*Esparza*, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam). Bishop has failed to locate any authority that suggests such an "objectively unreasonable" error occurred in her trial.

## V.

■ Bishop alleges that constitutionally insufficient evidence supported the perjury verdict concerning whether she committed perjury by denying that she "direct[ed] any of [her] staff to prepare, on county time, campaign material targeted at certain geographic areas within [her] district." We must determine whether the California Court of Appeal unreasonably decided that a rational juror could have found the required elements of perjury proved beyond a reasonable doubt. *Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir.2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied* —— U.S. ——, 126 S.Ct. 1142, 1145, 163 L.Ed.2d 1000 (2006).

The falsity element of California's perjury statute requires that a statement be "literally false." *Chein v. Shumsky*, 373 F.3d 978, 985 (9th Cir.2004) (en banc) (citing *People v. Rosoto*, 10 Cal.3d 939, 949, 112 Cal.Rptr. 641, 519 P.2d 1065 (1974); *Cabe v. Sup.Ct.*, 63 Cal.App.4th 732, 740, 74 Cal.Rptr.2d 331 (1998)). As the California Court of Appeal acknowledged, "none of the witnesses testified that [Bishop] expressly directed them to prepare their material for the [targeted] letter on county time." Instead, they testified that Bishop told them to complete the letter "as soon as possible" or "by noon." The California Court of Appeal, however, concluded that "their testimony supports an inference that she nevertheless communicated such a direction," because of the instruction's context and because the testimony "suggests that [the employees] interpreted [Bishop] as having directed preparation of the material in a time period within normal county business hours."

The conclusion that a reasonable juror could have found Bishop's statement to the grand jury false is not a reasonable assessment of the evidence. The addressees' decisions concerning how to respond to Bishop's instructions cannot render false Bishop's statement that they were not directed so to respond. Moreover, at least one employee did not so respond, but instead went home to complete the assigned task. Further, the inference that a task is to be done during "normal county business hours" is not equivalent to an inference that it is to be done on paid time, or in county offices. Finally, even if Bishop knew it was likely that the employees would likely perform the task on county time, that circumstance would not establish that she "direct[ed]" them to do so.

Although Bishop was less than forthcoming in her grand jury testimony by not acknowledging that her staff actually did prepare the material on paid county time, she did not commit perjury by making literally true statements that "cause[d] a misleading impression" by "failing to volunteer more explicit information." *Id.* (quoting *Rosoto*, 10 Cal.3d at 949, 112 Cal. Rptr. 641, 519 P.2d 1065). Without evidence that *Bishop* told her employees to do campaign work on county time, the California Court of Appeal unreasonably determined that a rational juror could find Bishop's statement literally false. The inadmissible opinion testimony that Bishop "lied" explains why the jury nonetheless returned a guilty verdict. *See id.* at 989 n. 6.

**AFFIRMED in part; REVERSED in part; REMANDED with instructions to grant a writ of habeas corpus with respect to count 10 of the conviction.**