FISHER, Circuit Judge,
dissenting:
When a sitting juror is alleged to have continuously texted a judge friend about the trial and relayed the judge’s information to the jury, the majority concludes the trial court need not investigate further— and the jury verdict would not violate due process. I disagree.
Just recently, in an analogous context, the Supreme Court reaffirmed that “the guarantee of an impartial jury is vital to the fair administration of justice.” Dietz v. Bouldin, — U.S. -, 136 S.Ct. 1885, 1893, 195 L.Ed.2d 161 (2016). Because due process does not tolerate “any ground of suspicion that the administration of justice has been interfered with” by external influence, Mattox v. United States, 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892), a jury must “decide the case solely on the evidence before it,” and the trial judge must “determine the effect of [prejudicial] occurrences when they happen,” Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). So obvious are these principles that Dietz needed no citation to conclude that, when there is even a “suggestion of prejudice,” a court “should, of course, determine whether any juror has been directly tainted.” 136 S.Ct. at 1894 (emphasis added). Dietz took this requirement for granted despite no allegation of extrinsic influence — only the possibility that a just-dismissed jury had been tainted before it was recalled. See id.
These bedrock principles are controlling here. Enrique Godoy alleged that, during trial, one of the jurors was texting a “Judge up North” about the case. Godoy presented a declaration from alternate juror N.L., which stated Juror 10 “kept continuous communication” with the “judge friend” and relayed the judge’s responses to the jury.[1] According to N.L., throughout the trial:
*1095 [J]uror number ten would communicate with her “judge Mend” about the case [by text message]. When the jury was not sure what was going on or what procedurally would happen next, juror number ten would communicate with her Mend and disclose to the jury what he said.[2]
Juror 10’s text messaging plainly was an “avenue[] for potential prejudice” to the verdict, as Dietz warns. 136 S.Ct. at 1895; see id. (“Prejudice can come through a whisper or a byte.”). Her texting “about the case” reasonably could have pertained to important procedural matters — such as why certain evidence was excluded, or how the jury was to decide the issue of guilt— that may have affected a juror’s views about the case. Especially because such continuous communications were relayed back to the jury, they were “possibly prejudicial” and “ha[d] a tendency to ... influence” the verdict. Mattox, 146 U.S. at 150, 13 S.Ct. 50.
Two consequences clearly must follow under Supreme Court authority. First, the communications were “presumptively prejudicial,” meaning “the burden rest[ed] heavily upon the [state] to establish” they were, in fact, “harmless.” Remmer v. United States (Remmer), 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954). Second, Godoy was entitled to an evidentiary hearing to investigate the issue of actual prejudice. See Smith, 455 U.S. at 217, 102 S.Ct. 940 (“This Court has long held that the remedy for allegations of juror partiality is a hearing....”). The California Court of Appeal’s decision, however, was “contrary to” and “an unreasonable application of’ this clearly established law. 28 U.S.C. § 2254(d)(1). Although correctly acknowledging N.L.’s declaration established the presumption of prejudice, the state court unreasonably concluded the same evidence rebutted it. The state court also denied Godoy an evidentiary hearing under the wrong legal rule, requmng him to demonstrate a “strong possibility” of prejudice. I would therefore remand to the district court for an evidentiary hearing and proper application of Remmer[1] s presumption of prejudice.
In upholding the state court’s denial of relief, the majority permits a presumption in name alone and all but eliminates Smith’s hearing requirement. -The majority thereby distorts the purpose of the An-titerrorism and Effective Death Penalty Act of 1996 (AEDPA), needlessly creates conflicts with our precedents and those of other circuits, and substantially weakens the due process guarantee of a fair trial. I respectfully dissent.
I
Godoy argues the California Court of Appeal unreasonably concluded the Rem-mer presumption “was rebutted” because N.L.’s declaration did not establish a “substantial likelihood of juror bias.” I agree. Because the prosecution had failed to introduce any contrary evidence, the state court relied solely on Godoy’s evidence to determine the issue of prejudice. In my *1096 view, it was an unreasonable application of Remmer to conclude the same evidence both established and rebutted the Remmer presumption. The majority makes little attempt to defend the state court’s actual reasoning, but instead goes out of its way to question whether the presumption should have applied in the first place. That discussion — which is irrelevant to our AEDPA analysis — is dicta and contrary to binding precedent.
A
The relevant clearly established law is straightforward. The right to trial before an impartial jury “absolutely forbid[s]” “[pjrivate communications, possibly prejudicial, between jurors and third persons.” Mattox, 146 U.S. at 150, 13 S.Ct. 50. “[A]ny” such extrinsic communications “about the matter pending before the jury” are therefore “presumptively prejudicial,” and “the burden rests heavily upon the [state] to establish ... that such contact with the juror was harmless.” Remmer, 347 U.S. at 229, 74 S.Ct. 450 (citing Mattox, 146 U.S. at 148-50, 13 S.Ct. 50). As the word “harmless” implies, the presumption is not rebutted unless the state shows “the absence of prejudice,” United States v. Olano, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), meaning “there is no reasonable possibility that the communication will influence the verdict,” Caliendo v. Warden of Cal. Men’s Colony, 365 F.3d 691, 697 (9th Cir. 2004) (observing that this rule is clearly established).
Although the California Court of Appeal correctly acknowledged Juror 10’s misconduct “raisefd] a rebuttable presumption of prejudice,” it unreasonably concluded “[t]he presumption of prejudice ... was rebutted” based on the same evidence.[3] As a matter of common sense, N.L.’s declaration could not simultaneously establish both possible prejudice and the absence of prejudice. If there were any doubt, Rem-mer itself made this point clear. Where the lower courts had inferred from some of the defendant’s evidence that the alleged offer to bribe a juror “had been made in jest,” Remmer v. United States, 205 F.2d 277, 291 (9th Cir. 1953), the Remmer Court reversed, stressing that, because a presumption of prejudice attached to the facts alleged by the defendant, “the burden rest[ed] heavily” on the government to show the contact was, in fact, “harmless,” 347 U.S. at 229, 74 S.Ct. 450. The Remmer presumption thus cannot be rebutted simply by drawing contrary inferences from the very evidence establishing the presumption. If it could, every showing that a communication was “possibly prejudicial” would be rebutted by the mere inference that the communication was not prejudicial.
The majority disagrees because, in its view, Remmer does not clearly require the introduction of contrary evidence to rebut the presumption. See Op. 1087-88. But Remmer did not need to spell out this requirement: it is intrinsic to the very definition of a “presumption.” See Black’s Law Dictionary 1304 (9th ed. 2009) (defining “presumption” as “calling for a certain result ... unless the adversely affected party overcomes it with other evidence” *1097 (emphasis added)); id. at 1306 (defining “rebuttable presumption” as “[a]n inference” that “may be overcome by the introduction of contrary evidence” (emphasis added)). It is black-letter law that a presumption cannot be rebutted where, as here, the opposing party fails to introduce contrary evidence. See Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (“[I]f [one party] is silent in the face of the presumption, the court must enter judgment for [the other party] because no issue of fact remains in the case.”); Lincoln v. French, 105 U.S. 614, 617, 26 L.Ed. 1189 (1881) (“Like other presumptions, it was sufficient to control the decision of the court if no rebutting testimony was produced.”). Tellingly, the majority points to no other “presumption” that can be rebutted in this manner.
Given the record here, no fairminded jurist could conclude the state court actually presumed prejudice. The only question the state court considered was whether Godo/s evidence established prejudice. The court thus faulted N.L.’s declaration for indicating the text messages “related to procedural matters” and failing to “suggest[ ] that the ‘judge friend’ communicated information prejudicial to [Godoy].” The majority assumes the state court presumed prejudice because it used the magical words “presumption” and “rebutted.” Op. 1088.1 do not think due process can be evaded so easily. Cf. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (“[Pjrocess which is a mere gesture is not due process.”). The state court applied a presumption in name alone; that is not a reasonable application of Remmer.
The majority also suggests the Remmer presumption is merely a tie-breaker that applies when the court cannot determine the nature of the alleged prejudice. Op. 1088-89. Even assuming this narrow view of the presumption is reasonable, the state court’s decision was unreasonable because it resolved a tie against Godoy. The state court concluded, “[n]othing in [N.L.’s] declaration suggests that the ‘judge friend’ communicated information prejudicial to [Godoy]” — even though it was unclear whether Juror 10’s texting “about the case” included procedural matters that may have affected a juror’s views about the case. Juror 10 reasonably could have been texting about, for example, why certain evidence was excluded or how the jury was to determine guilt. Because the state court could not determine — either way— whether the text messages actually concerned non-prejudicial matters, it could not resolve this ambiguity against Godoy. The state court’s application of Remmer was therefore unreasonable.
B
The majority explains at length why it is “skeptical” that Mattox and Remmer clearly established that Godoy was “entitled ... to a presumption of prejudice” at all. Op. 1086-87. Because the state court applied the presumption of prejudice, however, that extended discussion is irrelevant to our AEDPA analysis. See Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc) (“[I]f we were to defer to some hypothetical alternative rationale when the state court’s actual reasoning evidences a § 2254(d)(1) error, we would distort the purpose of AEDPA.”). And because the majority ultimately assumes the presumption applied, its discussion of the issue is dicta. But even on its own terms, the majority is wrong: the presumption clearly applied because Juror 10’s communications were “possibly prejudicial.” Mattox, 146 U.S. at 150, 13 S.Ct. 50. The majority’s attempt to walk back this clearly established law needlessly creates conflicts with our precedents.
*1098 1
We have already held it is clearly established that “[prejudice is presumed” where, as here, “[a] communication is possibly prejudicial” in that “it raises a risk of influencing the verdict.” Caliendo, 365 F.3d at 697. For good reason. Even by the time of Mattox, it was “text-book[ ]” law that “unauthorized communications having a tendency to adverse influence” can be “fatal to verdicts.” 146 U.S. at 150,13 S.Ct. 50. As Mattox explained, “the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiassed [sic] judgment.” Id. at 149, 13 S.Ct. 50. Mattox thus established that “possibly prejudicial” private communications “between jurors and third persons, or witnesses, or the officer in charge ... invalidate the verdict” unless they are rebutted. Id. at 150, 13 S.Ct. 50. This was not a high bar: Mattox made clear that “any ... suspicion” of extrinsic influence cannot be “tolerated.” 146 U.S. at 149,13 S.Ct.'50 (emphasis added).
This rule was obvious in Remmer, too. There, the Supreme Court needed no authority to conclude, “any private communication ... with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial.” 347 U.S. at 229, 74 S.Ct. 450 (emphasis added). Relying on Mattox, Remmer observed that the presumption of prejudice “is not conclusive,” but the government bears the “heav[y]” burden to establish “such contact with the juror was harmless to the defendant.” Id. (citing Mattox, 146 U.S. at 148-50, 13 S.Ct. 50). The Court then applied the presumption to a vague allegation of jury tampering even though the record did not indicate “what actually transpired, or whether the incidents that may have occurred were harmful or harmless.” Id. Again, this was not a high bar: Remmer reasoned that “[t]he integrity of jury proceedings” cannot be tainted by any “unauthorized invasions.” Id.
These authorities clearly establish that, to be presumptively prejudicial, an extrinsic juror communication need only “cross[ ] a low threshold to create the potential for prejudice.” Caliendo, 365 F.3d at 697. Our own cases have repeatedly recognized this “bright-line rule.” Tarango, 815 F.3d at 1221 (“Mattox established a bright-line rule: any external contact with a juror is subject to a presumption that the contact prejudiced the jury’s verdict....”); Tong Xiong v. Felker, 681 F.3d 1067, 1077 (9th Cir. 2012) (holding that Mattox and Rem-mer “establish[ ] the widely accepted bright-line rule that a finding of jury misconduct gives rise to a presumption of prejudice”); Caliendo, 365 F.3d at 697 (“The Mattox rule applies when an unauthorized communication with a juror crosses a low threshold to create the potential for prejudice.”).
As explained above, Juror 10’s continuous texting about the case was “possibly prejudicial” and had a “tendency to adverse influence.” Mattox, 146 U.S. at 150, 13 S.Ct. 50. “[F]or obvious reasons,” then, the communications were presumptively prejudicial. Remmer, 347 U.S. at 229, 74 S.Ct. 450.
2
The majority asserts three reasons why the presumption of prejudice might not have clearly applied here. Given our binding precedent to the contrary, none is persuasive.
First, relying on United States v. Dutkel, 192 F.3d 893, 895-96 (9th Cir. 1999), the majority contends Remmer announced a “special rule” that applies only in the jury tampering context. Op. 1086-87. I disagree. Although Remmer itself applies only to jury tampering, the presumption of prejudice is not so limited. Dutkel recog *1099 nized that other types of juror misconduct were controlled by post-iüemTOer cases, see 192 F.3d at 895 n.l, and we have since concluded that subsequent Supreme Court authority “did not signal a retreat from Mattox’ well-settled rule.” Caliendo, 365 F.3d at 697 n.3. We have repeatedly held, accordingly, that Mattox — not Remmer— clearly establishes the presumption of prejudice with respect to extrinsic communications. See, e.g., Tong Xiong, 681 F.3d at 1077-78; Caliendo, 365 F.3d at 697. Moreover, what is “special” about jury tampering is not that it is presumptively prejudicial, but that a credible allegation of tampering automatically gives rise to the presumption, see Dutkel, 192 F.3d at 895, whereas for extrinsic communications “the defendant must show that the eommunication[s] could have influenced the verdict before the burden of proof shifts to the prosecution,” Caliendo, 365 F.3d at 696. That distinction is immaterial here, however, because Godoy satisfied this burden.
Second, the majority tries to distinguish Mattox and Remmer as involving communications concerning “the matter pending before the jury.” Op. 1086-87 (quoting Remmer, 347 U.S. at 229, 74 S.Ct. 450). We have already rejected this argument. See Caliendo, 365 F.3d at 697 (“Nothing in Mattox suggests that for the rebuttable presumption to attach, the substance of the extrinsic contact must factually relate to the trial.”). Regardless, Juror 10’s continuous texting “about the case” plainly pertained to the matter before the jury. Because the text messages could have pertained to important procedural matters, such as why certain evidence was excluded or how the jury was to decide the issue of guilt, it is immaterial that N.L.’s declaration did not also say explicitly that the texts concerned Godo/s guilt or innocence. The texts were “possibly prejudicial” and hence presumptively prejudicial. Mattox, 146 U.S. at 150, 13 S.Ct. 50.
Third, the majority tries to limit Calien-do’s binding interpretation of Mattox as applying only where a juror communicates with a “witness” or “interested party.” Op. 1086-87. In fact, we held in Caliendo that “[t]he Mattox Court spoke in categorical terms, mandating that ‘possibly prejudicial’ out-of-court communications between jurors and outside parties” are presumptively prejudicial. 365 F.3d at 697 (emphasis added) (quoting Mattox, 146 U.S. at 150, 13 S.Ct. 50). Our holding was sound: Mattox clearly established in the same sentence that “possibly prejudicial” communications with “witnesses” and with “third persons” (ie., outside parties) are presumptively prejudicial. 146 U.S. at 150, 13 S.Ct. 50.
Because the presumption of prejudice clearly applied — and was applied by the state court — the majority’s extensive dicta are inconsistent with AEDPA, sow needless confusion in the law and create multiple conflicts with our precedent.
II
At this point, having concluded the California Court of Appeal unreasonably applied Remmer, we normally would determine de novo whether there was actual prejudice. See, e.g., Caliendo, 365 F.3d at 698. I would not do so here, though, because the deficiencies in the state court’s analysis arose from its failure to order an evidentiary hearing. I would therefore grant Godoy’s alternative request for an evidentiary hearing. As it turns out, that disposition is independently warranted because the state court also denied Godoy an evidentiary hearing under the wrong legal rule, and Godoy plainly was entitled to some sort of hearing.
A
The California Court of Appeal concluded Godoy was not entitled to any eviden-tiary hearing because he had “failed to *1100 demonstrate a ‘strong possibility that prejudicial misconduct [had] occurred.’” That decision was contrary to clearly established Supreme Court authority requiring an evidentiary hearing whenever the alleged misconduct is potentially prejudicial. The majority’s contrary view substantially weakens due process and misconstrues our precedents.
1
The Supreme Court “has long held that the remedy for allegations of juror partiality is a hearing.” Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Mattox observed that “possibly prejudicial” extrinsic communications “invalidate the verdict, at least unless their harmlessness is made to appear.” 146 U.S. at 150,13 S.Ct. 50. Accordingly, when such a communication occurs, a trial court must “determine ... whether or not [the communication] was prejudicial, in a hearing with all interested parties permitted to participate.” Remmer, 347 U.S. at 229-30, 74 S.Ct. 450 (emphasis added). This requirement is commanded by due process, which imposes on trial courts “a serious duty to determine the question of actual bias” when juror misconduct is alleged. Dennis v. United States, 339 U.S. 162, 168, 171-72, 70 S.Ct. 519, 94 L.Ed. 734 (1950); see also Smith, 455 U.S. at 217, 102 S.Ct. 940 (“Due process means ... a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.”).[4]
As the Supreme Court has explained, it is “manifest” that a “full hearing” is required where — as here — the presumption of prejudice attaches yet the prejudicial effect of the communications, if any, is unclear from the record. Remmer II, 350 U.S. at 379-80, 76 S.Ct. 425; see Tanner v. United States, 483 U.S. 107, 120, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (“The Court’s holdings requir[e] an evidentiary hearing where extrinsic influence or relationships have tainted the deliberations.... ”). We have concluded, as well, a hearing is clearly required where “a potentially prejudicial contact is alleged.” Tarango, 815 F.3d at 1224. A trial court has flexibility to determine the form of the hearing so long as the “investigation [is] reasonably calculated to resolve the doubts raised about the juror’s impartiality.” Dyer v. Calderon, 151 F.3d 970, 974-75 (9th Cir. 1998) (en banc). But some kind of “hearing” is required. Tanner, 483 U.S. at 120, 107 S.Ct. 2739; Smith, 455 U.S. at 215, 102 S.Ct. 940; Remmer II, 350 U.S. at 380, 76 S.Ct. 425; Remmer, 347 U.S. at 229, 74 S.Ct. 450; see also Tarango, 815 F.3d at 1224.
The California Court of Appeal did not apply this “potentially prejudicial” standard, but instead denied Godoy an eviden-tiary hearing because he had failed to show a “strong possibility” of prejudice. Although the state contended at oral argument that California’s “strong possibility” standard was identical to the federal standard, the two cases the state cited dealt with a different standard — namely, that required for proving actual prejudice. See People v. Thomas, 53 Cal.4th 771, 137 Cal.Rptr.3d 533, 269 P.3d 1109, 1147 (2012); People v. Loker, 44 Cal.4th 691, 80 Cal.Rptr.3d 630, 188 P.3d 580, 622 (2008). Neither case used the phrase “strong possibility” or even considered when an evi-dentiary hearing is required. In a similar *1101 context, we have concluded that California’s “strong likelihood” standard is contrary to federal law requiring only a “reasonable” inference of a certain outcome. See, e.g., Wade v. Terhune, 202 F.3d 1190, 1197 (9th Cir. 2000) (“California courts in following the ‘strong likelihood’ language of [California precedent] are not applying the correct legal standard for a prima facie case under Batson.”).
I would reach the same conclusion here. Because the state court denied Godoy an evidentiary hearing under the wrong legal rule, its decision was contrary to clearly established Supreme Court authority.
2
In reasoning that Godoy was not clearly entitled to a hearing, the majority all but eliminates the due process guarantees that Smith and Remmer establish once the presumption arises, as here. In the majority’s view, Smith and Remmer do not require a hearing at all — only that a trial court determine the effect of the extrinsic communication. See Op. 1089-91. So long as the trial court considers the defendant’s proffer of evidence of juror partiality and rules on the motion for a new trial, it has provided all the process Smith and Remmer require. See id. 1091-93.
This approach cannot be reconciled with Smith’s command that the very “remedy” for such allegations is itself “a hearing.” 455 U.S. at 215, 102 S.Ct. 940. There are two steps in the process. A court first determines, based on the defendant’s proffer, whether the communication is possibly prejudicial such that the presumption attaches. If not, no further inquiry is necessary. If the communication is possibly prejudicial, an evidentiary hearing is warranted. See, e.g., Remmer II, 350 U.S. at 380, 76 S.Ct. 425. Only then, at step two, does the court conduct the hearing required by Smith and Remmer. The California Court of Appeal here focused only on step one, unreasonably concluding that — although Godoy’s evidence was sufficient to trigger the presumption of prejudice — he was not entitled to an evidentiary hearing at step two. By contrast, the majority collapses the two steps, reasoning that the state court’s consideration of Go-doy’s proffer at step one was the hearing required by Smith and Remmer. By eliminating any hearing at step two, notwithstanding the state court’s initial presumption of prejudice, the majority ignores the Supreme Court’s repeated instruction that a hearing is required. See, e.g., Smith, 455 U.S. at 215, 102 S.Ct. 940; Remmer II, 350 U.S. at 380, 76 S.Ct. 425; Remmer, 347 U.S. at 229, 74 S.Ct. 450.
The majority’s truncated approach rests on the mistaken assumption that, because Remmer and Smith provide a “flexible rule,” Tracey v. Palmateer, 341 F.3d 1037, 1044 (9th Cir. 2003), neither decision ever clearly requires a hearing. See Op. 1090-91. We explained in Tracey, however, that this “flexible rule” means only that a “hearing is not mandated every time there is an allegation of jury misconduct or bias.” 341 F.3d at 1044 (quoting United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993)). Tracey expressly derived this proposition from Angulo, where we clarified, “In cases in which courts have not required an evidentiary hearing, the facts have shown clearly that the alleged misconduct or bias simply could not have affected the verdict.” 4 F.3d at 847 n.7 (emphasis added). Every case Tracey cited for this flexibility likewise held that no hearing is required when there is no reasonable possibility of prejudice and hence no presumption of prejudice.[5] In short, Rem- *1102 mer and Smith are flexible enough that they do not require a hearing when an extrinsic communication clearly could not have been prejudicial. But their flexibility ends there.
Neither Sims v. Rowland, 414 F.3d 1148 (9th Cir. 2005), nor Tracey concluded a court can reasonably refuse to conduct an evidentiary hearing once the presumption of prejudice arises. On the contrary, Sims expressly recognized that due process “forbids a trial judge from remaining idle in the face of evidence indicating probable juror bias.” Id. at 1156. Because “Sims ha[d] alleged, at most, incidental and unintentional juror influence” and had never requested an evidentiary hearing, we had no occasion to consider whether Smith and Remmer require an evidentiary hearing where the defendant alleges potentially prejudicial juror misconduct. Id. Similarly, the trial judge in Tracey actually conducted a hearing in which a juror testified about allegedly biased comments she had overheard from two other jurors. See 341 F.3d at 1039-40. We held that a “more elaborate hearing” to question the two jurors was not required because “[t]he allegations lacked specificity and noted a bias that, even if true, was not caused by outside influences and occurred before the presentation of evidence of the murder.” Id. at 1045. Again, we simply did not consider whether a hearing is required where the communication is potentially prejudicial and hence presumptively prejudicial.
The majority thus cites no authority— anywhere — for denying a hearing when there is evidence of potentially prejudicial extrinsic communications. In fact, the majority’s holding conflicts with Tarango and at least four other circuits.[6] That the California Court of Appeal required a strong possibility of prejudice therefore stretches Remmer and Smith beyond their breaking point.
B
In addition to weakening the guarantees of due process, the majority distorts the purpose of AEDPA. Where the state court unreasonably concluded Godoy was not entitled to any evidentiary hearing, the majority upholds that decision because, in its view, the trial court had already provided two hearings and was not clearly required to provide another. See Op. 1091-92. That *1103 approach is “inconsistent with AEDPA deference” because it ignores the California Court of Appeal’s “actual reasoning,” Frantz, 533 F.3d at 738 — which assumed there was no hearing at all.[7] Regardless, the majority’s approach is again erroneous on its own terms.
Even on the majority’s assumption that Godoy received a “hearing,” that “hearing” plainly did not comport with due process because it was not “reasonably calculated to resolve the doubts raised about the juror’s impartiality.” Dyer, 151 F.3d at 974-75. The trial court had the affidavit of alternate juror N.L., but did not seek to question N.L. or Juror 10 about the text-ing. The trial court also was aware that alternate juror E.M. wanted to testify— and even put her on the stand to obtain her contact information — but did not seek to question her either. Such questioning could have clarified the content and frequency of the text messages, as well as the extent to which they were communicated to the jury. But because the trial court failed to conduct any such investigation, it could not resolve doubts about the jurors’ impartiality. The trial court thus plainly failed to ascertain “the circumstances, the impact thereof upon the juror” and whether Juror 10’s texting was, in fact, prejudicial. Remmer, 347 U.S. at 230, 74 S.Ct. 450.
The majority disagrees primarily because it thinks the trial court “was ready to ‘hear testimony from’ E.M. but for the failure of Godoy’s counsel to comply with basic rules of evidence.” Op. 1092. Not so. At the initial motions hearing, the trial court repeatedly said it had not yet “ma[d]e a decision whether we will hear testimony.”[8] The issue the court put over, then, was not E.M.’s actual testimony but whether to hear that testimony. The trial court refused to decide that issue until the prosecution could interview the witness or receive the witness’ statement. As Godoy’s counsel explained, he had not provided that information sooner because he “didn’t have it.” Yet even after he subsequently gave the prosecution a witness statement from alternate juror N.L., and the prosecution had the opportunity to interview alternate juror E.M.,[9] the trial court still did not invite Godoy to present live testimony, but told counsel — no fewer than four times — he could “continue [his] argument.”
The majority nevertheless assumes the trial court “surely would have” heard the testimony “had Godoy’s counsel brought E.M. or N.L. to the second [motions] hearing.” Op. 1092. Wrong again. When defense counsel mentioned that the court had refused to permit E.M. to testify, the trial court asked, “I said where is your affidavit? ... You didn’t give me an affidavit.” Despite counsel’s objection that it was “rock solid reversible error” not to hold an evidentiary hearing under the circumstances, the trial court repeatedly insisted he provide affidavits instead. Counsel observed, “[t]here is no requirement that *1104 affidavits are the only way that misconduct can be brought to the court’s attention,” and the court’s “choos[ing] to do nothing about [E.M.]” was “reversible error.” Yet the trial court persisted, permitting counsel only to continue his argument “including [any] juror’s affidavit.” The trial court showed no willingness to permit — let alone invite or compel — live testimony.[10]
At bottom, the majority fundamentally confuses a defendant’s burden to establish potential prejudice — which Godoy did— with the trial court’s independent duty to investigate the actual impact on the jury and, where necessary, compel testimony. Cf. Dyer, 151 F.3d at 978 (“Where juror misconduct or bias is credibly alleged, the trial judge cannot wait for defense counsel to spoon feed him every bit of information which would make out a case of juror bias; rather, the judge has an independent responsibility to satisfy himself that the allegation of bias is unfounded.”). Because the trial court made no meaningful attempt to investigate “the circumstances, the impact thereof upon the juror, and whether or not [Juror 10’s texting] was prejudicial,” Go-doy was clearly deprived of due process. Remmer, 347 U.S. at 230, 74 S.Ct. 450. I would therefore vacate the judgment and remand for the evidentiary hearing to which Godoy is entitled. See, e.g., Tarango, 815 F.3d at 1227.
Ill
I acknowledge the majority’s concerns that Godoy’s counsel could have been prompter and better prepared. But the unfortunate lawyering in this case provides no basis for denying Godoy basic guáran-tees of due process. Dietz reminds us that the inquiry here should have been simple: Godoy raised a “suggestion of prejudice,” so “of course” the state court should have “determine[d] whether any juror ha[d] been directly tainted.” Dietz v. Bouldin, — U.S. -, 136 S.Ct. 1885, 1894, 195 L.Ed.2d 161 (2016) (emphasis added). Instead of doing that, the California Court of Appeal denied an evidentiary hearing under the wrong legal rule, then unreasonably applied Remmer in concluding the presumption of prejudice was rebutted. By whitewashing those errors, the majority’s opinion erodes the very protections Dietz — like its predecessors' — found “vital to the fair administration of justice.” Id. at 1893.1 respectfully dissent.

. Godoy’s counsel also offered to present live testimony from alternate juror E.M. on this *1095 claim, but the trial court granted the prosecution's request for a continuance and did not hear the testimony. In his state habeas petition, Godoy subsequently submitted a declaration from E.M. I assume the majority is correct that this second declaration is not part of the record for purposes of our analysis. See Op. 1088-89. Even based solely on N.L.’s declaration, though, Godoy was clearly denied due process.

. Although N.L.’s declaration stated Juror 10 was texting during deliberations, as well, there is no indication how N.L. would have had personal knowledge of that fact. My conclusion therefore rests only on the fact that Juror 10 was texting about the case continuously during trial.

. The majority notes the California Court of Appeal applied the presumption "under California law.” Op. 1087. That was tantamount to a conclusion the presumption applied under federal law as well. The California Supreme Court has repeatedly derived the rebut-table presumption from Remmer itself. See, e.g., In re Price, 51 Cal.4th 547, 121 Cal. Rptr.3d 572, 247 P.3d 929, 938 (2011); People v. Danks, 32 Cal.4th 269, 8 Cal.Rptr.3d 767, 82 P.3d 1249, 1282 (2004). And it has held California’s "standard for determining prejudice resulting from juror misconduct” is not “inconsistent with federal law.” People v. Loker, 44 Cal.4th 691, 80 Cal.Rptr.3d 630, 188 P.3d 580, 622 (2008).

. Mattox, for example, required a trial court to admit and consider juror affidavits concerning what effect a newspaper article had on the jury’s deliberations because the article had a “tendency” to be "injurious to the defendant.” 146 U.S. at 150-51, 13 S.Ct. 50. Similarly, Remmer required a "full hearing” to determine the effect of alleged jury tampering because of the "paucity of information relating to the entire situation” and the presumption of prejudice that attached to the improper communications. Remmer v. United States (Remmer II), 350 U.S. 377, 379-80, 76 S.Ct. 425, 100 L.Ed. 435 (1956).

. See United States v. Hanley, 190 F.3d 1017, 1031 (9th Cir. 1999) (holding no hearing was required where the alleged "vague statements did not expose Defendants to unfair prejudice”); United States v. Langford, 802 F.2d *1102 1176, 1180 (9th Cir. 1986) (holding no hearing was required where the allegations were “insufficient to support a finding of a reasonable possibility [of prejudice]”); United States v. Halbert, 712 F.2d 388, 389 (9th Cir. 1983) (holding no hearing was required where there was "no reasonable possibility” of prejudice because the court "knew the exact scope and nature” of the allegedly prejudicial information).

. Tarango, 815 F.3d at 1224 ("Once a potentially prejudicial contact is alleged, the court should 'determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.’ " (emphasis added) (quoting Remmer, 347 U.S. at 230, 74 S.Ct. 450)); See Barnes v. Joyner, 751 F.3d 229, 242 (4th Cir. 2014) (‘’Remmer clearly established ... a defendant’s entitlement to an evidentiary hearing ... when the defendant presents a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury.”); Stouffer v. Trammell, 738 F.3d 1205, 1214 (10th Cir. 2013) ("The trial court’s duty to conduct a Remmer hearing when genuine concerns of improper juror contact arise is clearly established by the Supreme Court.”); Garcia v. Andrews, 488 F.3d 370, 375 (6th Cir. 2007) (observing the Supreme Court has established "an evidentiary hearing ... is required ... where 'extrinsic influence or relationships have tainted the deliberations’ ” (quoting Tanner, 483 U.S. at 120, 107 S.Ct. 2739)); Willard v. Pearson, 823 F.2d 1141, 1148 (7th Cir. 1987) ("Due process requires ... that the trial court hold a hearing to determine if the potentially compromising situation has ... actually prejudiced the defendant.”).

.The majority's insistence that there were multiple "hearings” is baffling. The trial court never heard live testimony; and it considered N.L.’s declaration not at an “evidentiary hearing,” but as part of Godoy's initial offer of proof to support his motion for a new trial. Everyone — including the prosecutor, the trial court and the California Court of Appeal— agreed there was no “hearing.” Indeed, the very issue before the court was whether a hearing was required.

. The trial court stated in no uncertain terms it “ha[d]n't made a final decision on” whether to hear live testimony; asked the prosecution if it needed more time “before we decide whether we’re going to hear from this witness”; and stressed it would give the prosecution "more time on ... whether we're going to hear testimony from somebody today.”

. Godoy did not submit a witness statement from alternate juror E.M. until he filed his state habeas petition.

. Contrary to the majority’s assertion, the trial judge never expressed any concerns about the admissibility of N.L.'s testimony. Cf. Op. 1092 n.3. Rather, the trial court was concerned that E.M. 's testimony might be inadmissible because "[a] juror can’t impeach their verdict.” But California law permits “any otherwise admissible evidence” — including testimony — "as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly.” Cal. Evid. Code § 1150 (West 2006) (emphasis added). Because the trial court gave no indication it would permit testimony as to even these matters, its investigation could not have reasonably ascertained the actual circumstances or impact of the communications on the jury. See Remmer, 347 U.S. at 230, 74 S.Ct. 450.